MARY WOHLFAHRT, as ADMINISTRATRIX, PLAINTIFF, *v.* CHARLES A. BECKERT, DEFENDANT.

*Druggist — liability of, for selling poison without labeling it as such.*

The plaintiff's intestate, who was suffering from a diarrhœa, went, at the advice of a friend, to a drug store to procure ten cents worth of "black draught," a comparatively harmless drug, of which he intended to take, as a dose, a small glassful. The druggist's clerk testified that he came to the store and asked the proprietor, the defendant, for ten cents worth of "black drops;" that the defendant told him that that was a poison, that the dose was from ten to twelve drops, and advised him to take another mixture; he refused, and the clerk, by the defendant's direction, gave him two drachms of "black drops" in a bottle, with a label having those two words written upon it, but nothing to indicate the dose or that it was poison. The intestate took the bottle home, drank almost all of its contents, and died the next morning from the effects of so doing.

In this action, brought by the plaintiff to recover damages for the negligent killing of her intestate by the defendant:

*Held,* that the court should have submitted to the jury the question as to whether the defendant was not guilty of negligence in failing to place upon the bottle a label showing that its contents were poisonous; and that it erred in nonsuiting the plaintiff.

MOTION for a new trial directed to be heard.in the first instance at the General Term, after a verdict in favor of the defendant had been directed at the circuit.

This action was brought to recover damages for the death of the plaintiff's intestate, Matthias Wohlfahrt, which was alleged to have been caused by the wrongful act and neglect of the defendant.

Upon the trial evidence was given tending to show the following facts : The deceased, being temporarily troubled with diarrhœa or some bowel complaint, was informed by a peddler that a preparation known as "black draught," of which he could take a small glassful, would relieve him of his diarrhœa, and that he could get ten cents worth of this "black draught" in any drug store. The deceased went to defendant's drug store, by and according to the testimony of the defendant's clerk, purchased ten cents worth of "black drops," instead of "black draught." "Black drops," is a deadly poison, being the strongest preparation of opium, and from seven to ten drops are a dose. "Black draught" is a comparatively harmless drug.

The bottle was simply labeled "black drops." No dose was written upon the label. The word "poison" was not written or printed upon the label, nor was any word or phrase to indicate the poisonous character of the drug written or printed upon the label or bottle.

Upon his return home the plaintiff, the wife of deceased, took the medicine into her own hand, tasted the medicine and then poured it in a little glass and gave it to her husband. The quantity in the bottle according to the testimony of defendant's clerk was two drachms, and nearly all of it, with the exception of a few drops, was given to and swallowed by the deceased..

The result of this dose was that Wohlfahrt died within a few hours thereafter despite of all the efforts of medical skill to relieve him.

Waldemar Voiegt, the clerk of defendant, testified that the deceased entered the defendant's store and asked the defendant, who was sitting in a chair in the store, for ten cents worth of "black drops" for cramps in his stomach, that the defendant told the deceased that this was a poison and recommended him to take cholera drops, but that he refused; that the defendant then told him

that he should take only ten or twelve drops for a dose ; that thereupon the clerk, in pursuance of the defendant's direction, gave the deceased two drachms of " black drops."

The trial judge held that it was not necessary to call any further witnesses, directed the jury to find a verdict for the defendant, and ordered the exceptions to be heard in the first instance at the General Term.

*Samuel Greenbaum*, for the plaintiff.

*Semler & Towns*, for the defendant.

DYKMAN, J.:

Human life is among the inherent and inalienable rights of man kind. Bestowed by the Creator it cannot be wrongfully or neglectfully destroyed by man. Culpable negligence, by which a human being is killed, is a crime amounting to manslaughter, and the term culpable implies an act less atrocious than a crime. " So highly does the law value human life that it admits of no justification wherever life has been lost, and the carelessness or negligence of any one person has contributed to the death of another person." (*Regina v. Swindall*, 2 Car. & Kir., 232.) This was quoted with approval in *Thomas* v. *Winchester* (6 N. Y., 409), where it was also said " this rule applies not only where the death of one is occasioned by the negligent act of another, but where it is caused by the negligent omission of duty of that other."

Persons dealing in poisons are held to the highest degree of caution and care. It is a crime to sell any poisonous substance without the word poison written or printed on a label attached to the parcel in which the sale is made. (3 R. S. [6th ed.], 973, § 25.)

If this defendant was guilty of negligence in the sale of this poison, he is answerable both criminally and civilly for the result. The sale was to a consumer, and the defendant knew that misuse of the article would place his life in imminent peril and might result in death. His own knowledge, the ignorance of the purchaser, the great danger of an overdose, or improper use of the medicine, all joined to demand of him the exercise of the highest degree of caution possible to human prudence.

If an apothecary negligently sell poison for a harmless medicine, from the effect of which the patient dies, a right of action in tort survives. (*Norton* v. *Sewall*, 106 Mass., 143.) By the statute of that commonwealth, actions of tort, assault, battery, imprisonment or other damage to the person survive to the personal representatives of the injured party. Justice GRAY, in delivering the opinion of the court, says: "The jury must be taken to have found that the defendant, an apothecary, by his servant, negligently sold, as and for tincture of rhubarb (a well known and harmless medicine), two ounces of laudanum, a dangerous and deadly poison, to Patten, who procured it for the purpose of administering it, and did administer one ounce of it as a medicine to his servant, the plaintiff's intestate, from the effects of which he died. The finding includes a violation of duty on the part of the defendant, and an injury resulting therefrom to the intestate, for which the defendant was responsible, without regard to the question of privity of contract between them."

The case of *Thomas* v. *Winchester* (*supra*) is to the same effect. There the agent of the defendant, who manufactured vegetable extracts for medicinal purposes, put up belladonna, a deadly poison, in a jar, and labeled it dandelion, and in that condition sold it to one Aspinwall, a druggist in New York, as and for extract of dandelion. Aspinwall sold the article to Dr. Foord, a druggist, who put it up for the plaintiff in pursuance of a physician's prescription calling for dandelion. A small quantity of the medicine thus purchased was administered to the plaintiff and produced very alarming symptoms and placed her life in great danger.

The Court of Appeals decided that the defendant was responsible for the injury without any privity of contract, because he committed an act of negligence imminently dangerous to the lives of others, and so was liable to any party sustaining injury therefrom. The opinion of the court also sustains the doctrine that the negligent sale of poison is an indictable offense both at the common law and under our statute, and quotes with approval an English case, where it was held that a chemist who sold laudanum in a phial labeled as paregoric, and thereby caused the death of a person to whom it was administered, was guilty of manslaughter. (*Fessymond's Case,* Lewin's Crown Cases, 169.)

In the case at bar there was privity of contract. The defendant made sale to the plaintiff's intestate of an article of the double strength of laudanum, for immediate consumption as a medicine, without placing on it any label marked poison, and the result was a natural one. True he told him it was poison, and gave him caution respecting the quantity to be taken, but he placed no label on the parcel marked poison. It is plain that prudence required much more of the defendant than he gave, and it is equally plain that his action fell far short of the requirements of the law.

The cause should have been submitted to the jury, with proper instructions, respecting the caution and care required of the defendant, to determine whether he was guilty of negligence in the transaction, and whether the intestate of the plaintiff was free from fault on his part.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GILBERT. J., concurred.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Exceptions sustained and new trial granted, costs to abide event.